STATE of Tennessee, Appellee,

v.

Frank "Bud" DYKES, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 27, 1990.

Permission to Appeal Denied by Supreme Court Dec. 10, 1990.

Charles W. Burson, Atty. Gen. & Reporter, Bettye Springfield–Carter, Asst. Atty. Gen., Nashville, C. Berkeley Bell, Dist. Atty. Gen., Greeneville, Doug Godbee, Asst. Dist. Atty. Gen., Rogersville, for appellee.

B.C. McInturff, Kingsport, for appellant.

## OPINION

JONES, Judge.

The appellant, Bud Dykes, was convicted of selling more than one-half ounce of marijuana by a jury of his peers. The trial judge, finding the appellant to be a Range I standard offender, sentenced the appellant to pay a fine of $5,000 and serve one year and six months in the local jail.

## ISSUES PRESENTED FOR REVIEW

The appellant raises five issues for our review. He contends that the evidence contained in the record is insufficient to sustain his conviction. He further contends that the trial judge erred in overruling his motion to dismiss, denying his motion for a continuance, refusing to suspend his sentence, and the sentence imposed by the trial judge is excessive.

## SUFFICIENCY OF THE EVIDENCE

On the afternoon of January 26, 1988, an agent of the Tennessee Bureau of Investigation, along with a cooperating individual, visited the home of the appellant. The agent gave the cooperating individual $30. This person subsequently entered the appellant's residence. A few minutes later the appellant exited the residence, got into a pick-up truck, crossed the roadway in front of his home, and drove into an open field. A few minutes later, the appellant returned and handed the agent a bag containing a green, leafy substance. The agent asked the appellant if he could purchase a second bag for $30. The appellant agreed to make the sale. He again drove into the field across from his residence. When he returned, he handed the agent a second bag containing a green, leafy substance.

The forensic chemist who tested the contents of the two bags testified that the green, leafy substance contained in the two bags was marijuana. Each bag contained approximately one ounce of marijuana.

The appellant, a self-employed logger, attempted to establish an alibi defense. He contended that he loaded his truck with logs on the date in question, and, thereafter, delivered the logs to a sawmill in Greene County. Both he and his brother testified that he arrived home between 4:30 p.m. and 5:00 p.m. on the date in question. He introduced two receipts from a sawmill dated January 25, 1988, and January 26, 1988. He emphatically denied selling marijuana to the agent, and he further denied owning a pick-up truck like the one described by the agent.

Several witnesses testified in support of the appellant's defense. However, their testimony was tentative at best.

The State presented the owner of the sawmill in rebuttal. He related that the appellant had contacted him approximately a month prior to the trial date. The appellant told him that he had lost his receipts for January 25, 1988, and January 26, 1988. Although the witness could not find any records to establish that he had purchased logs from the appellant on these dates, he nevertheless prepared the receipts that the appellant introduced into evidence.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." [1] This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or direct and circumstantial evidence. [2]

In determining the sufficiency of the evidence, we do not reweigh or reevaluate the evidence. [3] Nor may we substitute our inferences for those drawn by the trier of fact from circumstantial evidence. [4] To the contrary, we are required to afford the State of Tennessee the strongest legitimate

1. Tenn.R.App.P. 13(e).

2. *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 208 Tenn. 75, 79, 343 S.W.2d 895, 897 (1961).

3. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978).

4. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).

view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.[5]

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court.[6] In *State v. Grace*[7] our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."[8]

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt,[9] the appellant has the burden in this Court of illustrating why the evidence contained in the record is insufficient to support the verdict returned by the trier of fact.[10] This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record, and any inferences which may be drawn from the facts, are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.[11]

There is sufficient evidence contained in the record from which a rational trier of fact can conclude that the appellant is guilty of selling more than one-half ounce of marijuana to the TBI agent beyond a reasonable doubt.[12] The jury obviously did not believe the appellant or his witnesses as it rejected his alibi defense.

This issue is without merit.

## RIGHT TO SPEEDY TRIAL

■ The appellant stated in his motion for a new trial as well as in his brief: "The Court erred in overruling his Motion to Dismiss." This issue does not conform to Rule 27(a)(4), Tennessee Rules of Appellate Procedure, and, as a result, it has been waived. The issue is too broad in scope.[13] As the Court of Appeals said in *Tortorich v. Erickson:* "To answer such a query requires a degree of clairvoyance with which this Court is not possessed."[14]

In *State v. Gauldin,* supra, the appellant raised an issue as to "[w]hether the instructions given by the Court to the Jury were unclear and confusing." This Court ruled that the issue was waived because it was too broad in scope. In *State v. King,* supra, issues to the effect that "[t]he court erred in the charges it charged the jury as to the applicable law in this case" and "[t]he District Attorney committed error in his argument to the jury," were held to be too broad. Consequently, the issues were not considered by this Court. The same result was reached in *State v. McKinney,* supra. In *State v. Newsome,* supra, one appellant contended that "during voir dire the assistant district attorney general prefaced one question or remark with some statement having to do with the kind of favors that rape defendants and/or their attorneys would or would not want, such as young women," while another appellant contended that "the State through its assistant district attorney [general] made comments that implied that counsel for the defendant was using trickery in an effort to select men or exclude all women from the jury to hear the case." This Court

---

5. *State v. Cabbage,* supra, 571 S.W.2d at 835.

6. *State v. Cabbage,* supra, 571 S.W.2d at 835.

7. 493 S.W.2d 474 (Tenn.1973).

8. *State v. Grace,* supra, 493 S.W.2d at 476.

9. *State v. Grace,* supra, 493 S.W.2d at 476.

10. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

11. *State v. Tuggle,* supra, 639 S.W.2d at 914.

12. Tenn.R.App.P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

13. *See Harvey v. State,* 749 S.W.2d 478, 479 (Tenn.Crim.App.1987); *State v. Newsome,* 744 S.W.2d 911, 914 (Tenn.Crim.App.1987); *State v. Gauldin,* 737 S.W.2d 795, 797–798 (Tenn.Crim. App.1987); *State v. King,* 622 S.W.2d 77, 79 (Tenn.Crim.App.1981); *State v. McKinney,* 603 S.W.2d 755, 759–760 (Tenn.Crim.App.1980); *Leeson v. Chernau,* 734 S.W.2d 634, 637 (Tenn. App.1987); *Tortorich v. Erickson,* 675 S.W.2d 190, 191 (Tenn.App.1984).

14. 675 S.W.2d at 191.

commented that "[t]hese vague conclusory allegations fall far short of presenting issues for review by this Court." [15] In summary, the "questions presented must be specific. They must not be so general as to be meaningless." [16]

We also note that the transcript of the hearing on the motion to dismiss is not adequate to support appellate review of this issue.

The resolution of this issue hinges upon numerous dates and events. However, the appellant did not offer any evidence in support of his motion, and there is no stipulation apparent on the face of the record. The hearing consisted of the statements and arguments of counsel regarding this issue. It must be remembered that allegations contained in pleadings [17] and statements made by counsel during a hearing or a trial [18] are not evidence. The same is true with regard to the recitation of facts and argument contained in a brief submitted to this Court.[19]

■ We opt to consider this issue. Of course, our decision will be limited to the facts outlined by counsel during the presentation of the motion.

It appears that the transaction in question was part of a regional undercover operation which was established to investigate the sale of illicit drugs. The indictment was returned after the investigation was terminated. The sale of marijuana to the T.B.I. agent is alleged to have occurred on January 26,. 1988. The indictment was returned on January 5, 1989. A capias was subsequently issued for the appellant's arrest.

On the 22nd day of September, 1989, the appellant filed a motion to dismiss the prosecution. The motion alleged a deprivation of the right to a speedy trial. The trial judge, noting that the motion was filed approximately three (3) months after the return of the indictment, dismissed the motion.

■ Delay between the commission of an offense and the commencement of adversarial proceedings does not violate an accused's constitutional right to a speedy trial.[20] However, such a "delay may occur in such a manner that the defendant's Fifth Amendment right to due process—in contrast to the Sixth Amendment right to speedy trial—is violated." [21] In *United States v. Marion*, supra, the United States Supreme Court said: "[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the preindictment delay ... caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." [22] This Court recognized the rule articulated in *Marion* in *Halquist v. State.* [23] In *Halquist* this Court said: "While there is no constitutional right to be arrested, ... courts have recognized that an unreasonable delay between the commission of the offense and the arrest may violate the defendant's constitutional rights if the delay

15. *State v. Newsome,* supra, 744 S.W.2d at 914.

16. H. Weihofen, *Legal Writing Style,* 2nd ed. 1980.

17. *Hillhaven Corp. v. State ex rel. Manor Care, Inc.,* 565 S.W.2d 210, 212 (Tenn.1978); *State v. Aucoin,* 756 S.W.2d 705, 716 (Tenn.Crim.App. 1988), *cert. denied,* 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989); *State v. Roberts,* 755 S.W.2d 833, 836 (Tenn.Crim.App.1988).

18. *State v. Roberts,* supra, *State v. Dobbins,* 754 S.W.2d 637, 640 (Tenn.Crim.App.1988); *State v. Burton,* 751 S.W.2d 440, 450 (Tenn.Crim.App. 1988); *State v. Rhoden,* 739 S.W.2d 6, 14 (Tenn. Crim.App.1987); *Davis v. State,* 673 S.W.2d 171, 173 (Tenn.Crim.App.1984); *Trotter v. State,* 508 S.W.2d 808, 809 (Tenn.Crim.App.1974).

19. *State v. Roberts,* supra, 755 S.W.2d at 836; *State v. Burton,* supra, 751 S.W.2d at 450.

20. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *State v. Baker,* 614 S.W.2d 352 (Tenn.1981); *State v. Walton,* 673 S.W.2d 166, 170 (Tenn.Crim.App.1984); *Boswell v. State,* 528 S.W.2d 825, 826–827 (Tenn.Crim. App.1975).

21. *State v. Baker,* supra, 614 S.W.2d at 354.

22. 404 U.S. at 324, 92 S.Ct. at 465, 30 L.Ed.2d at 481. *See State v. Dunning,* 762 S.W.2d 142, 144 (Tenn.Crim.App.1988).

23. 489 S.W.2d 88 (Tenn.Crim.App.1972).

results in prejudice to him or was part of a deliberate, purposeful and oppressive design for delay." [24]

■ Before an accused is entitled to relief based upon the delay between the offense and the initiation of adversarial proceedings, the accused must prove that (a) there was a delay, (b) the accused sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused. In the case *sub judice* the appellant failed to carry his burden in this regard. As previously stated, the appellant did not offer any evidence in support of his motion.

■ In *State v. Baker*, supra, our Supreme Court held that the expiration of eighteen (18) months did not result in prejudice to the accused. Here the delay was less than sixteen (16) months. Consequently, the appellant was not entitled to relief based upon the time between the date of the offense and the institution of adversarial proceeding.

The passage of three (3) months following the return of an indictment or presentment is insufficient, as a matter of law, to trigger a speedy trial analysis; and it will not warrant the dismissal of a prosecution.[25]

This issue is without merit.

### MOTION FOR CONTINUANCE

■ On the morning the trial was to commence, defense counsel advised the trial judge that a defense witness was not present. He stated that "[w]e have been unable to locate him." According to defense counsel, a subpoena was issued for the witness, but the sheriff's department was unable to serve the subpoena. However, there is nothing contained in the record to establish that a subpoena was in fact issued for the witness, and, if issued, when it was issued, what efforts had been taken to obtain a correct address or location where the witness could be served, or whether defense counsel monitored the progress being made by the sheriff's office in serving the subpoena. Moreover, there is nothing contained in the record to establish when the witness would be available. In fact, it appears that defense counsel had not interviewed the witness prior to the trial date. What he related to the trial judge regarding the materiality of the missing witness was obtained from the appellant.

The trial judge denied the motion. However, he advised counsel that the efforts to locate the witness would continue, and the trial judge apparently issued an attachment *pro corpus* for the witness. The record reflects that the witness was taken into custody approximately three weeks after the trial had ended. The trial judge also told defense counsel that he would permit him to develop this point "more fully for the record" after the jury had been selected. Defense counsel did not develop this issue when given the opportunity.

The appellant presented four alibi witnesses, and he testified in support of his defense as well.

■ When an accused seeks a continuance on the ground a witness is unavailable, the accused is required to file a written motion which sets forth the grounds with particularity;[26] and the motion must be supported by an affidavit.[27] The affidavit must allege (a) the substance of the facts that the accused expects to prove through the unavailable witness,[28] (b) sufficient facts to establish the relevance and materiality of the testimony of the unavail-

---

24. *Halquist v. State*, supra, 489 S.W.2d at 93.

25. *See, State v. Baker*, supra, [four and one-half months delay]; *State v. Arnold*, 719 S.W.2d 543, 547 (Tenn.Crim.App.1986), [a delay of four months and ten days]; *Dodson v. State*, 497 S.W.2d 767, 769 (Tenn.Crim.App.1973), [a delay of five (5) months].

26. Tenn.R.Crim.P. 47.

27. Tenn.Code Ann. § 19–1–110(a).

28. Tenn.Code Ann. § 19–1–110(a). *See State v. Hartman*, 703 S.W.2d 106, 117–118 (Tenn.1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986); *State v. Howell*, 672 S.W.2d 442, 445–446 (Tenn.Crim.App.1984).

able witness,[29] (c) the testimony would be admissible, if the witness was available,[30] (d) the testimony is not merely cumulative to other evidence,[31] (e) the witness will be available at a later date,[32] and (f) diligence was exercised to obtain the presence of the witness.[33] The failure to file a proper motion and/or a properly drafted affidavit, standing alone, will justify the denial of the motion without a hearing.[34]

The record transmitted to this Court does not reveal that a written motion or affidavit was filed in the cause. Moreover, defense counsel declined the trial judge's offer to present evidence in support of his motion.[35]

■ Whether a criminal trial should be continued to a later date is a matter which addresses itself to the sound discretion of the trial judge.[36] Consequently, this Court will not interfere with the exercise of this discretion unless it appears upon the face of the record that (a) the trial judge has abused his discretion and (b) prejudice enured to the accused as a direct result of the trial judge's ruling.[37] In the case *sub judice* the trial judge did not abuse his discretion. It is obvious that the testimony outlined by counsel would have been cumulative. Also, there is nothing contained in the record to indicate when the witness would have been available; nor does the record establish that the appellant exercised diligence to obtain the presence of the unavailable witness.

This issue is without merit.

## DE NOVO REVIEW OF SENTENCE

■ The appellant contends that the trial judge committed error of prejudicial dimensions in refusing to suspend his sentence and place him on probation. He further contends that the sentence imposed is excessive.

We parenthetically note that this issue has been waived because it has not been properly briefed.[38] The appellant has failed to make appropriate references to the record;[39] and he has failed to cite authority to support his contention that he should have been granted on probation.[40] The only statute which he cites is generic in nature and does not relate to either sentencing issue. He also has failed to explain why his sentence is excessive.[41]

29. *Moorehead v. State,* 219 Tenn. 271, 274–275, 409 S.W.2d 357, 358–359 (1966); *State v. Frahm,* 737 S.W.2d 799, 802 (Tenn.Crim.App.1987).

30. *State v. Hartman,* supra; *State v. Reynolds,* 671 S.W.2d 854, 856 (Tenn.Crim.App.1984); *Marshall v. State,* 497 S.W.2d 761, 766 (Tenn. Crim.App.1973).

31. *State v. Robinson,* 106 Tenn. 204, 210, 61 S.W. 65, 66 (1901); *State v. Frahm,* supra; *Reagan v. State,* 525 S.W.2d 683, 686 (Tenn.Crim. App.1974).

32. *State v. Reynolds,* supra; *Brown v. State,* 489 S.W.2d 855, 856–857 (Tenn.Crim.App.1972).

33. *State v. Jefferson,* 529 S.W.2d 674, 688 (Tenn. 1975), appeal after rem. 559 S.W.2d 649 (Tenn. Crim.App.1977); *State v. Reynolds,* supra, 671 S.W.2d at 856; *Houston v. State,* 567 S.W.2d 485, 488 (Tenn.Crim.App.1978).

34. *Mitchell v. State,* 92 Tenn. 668, 23 S.W. 68 (1893); *Rhea v. State,* 18 Tenn. 257 (1837). *See Vermilye v. State,* 584 S.W.2d 226, 230 (Tenn. Crim.App.1979).

35. *See* Tenn.R.App.P. 36(a).

36. *Hunter v. State,* 222 Tenn. 672, 688, 440 S.W.2d 1, 8 (1969); *Moorehead v. State,* supra, 219 Tenn. at 274–275, 409 S.W.2d at 358; *State v. Seals,* 735 S.W.2d 849, 853 (Tenn.Crim.App. 1987).

37. *See State v. Seals,* supra; *State v. Goodman,* 643 S.W.2d 375, 378 (Tenn.Crim.App.1982); *Maxwell v. State,* 501 S.W.2d 577, 580 (Tenn. Crim.App.1973); *Smith v. State,* 2 Tenn.Crim. App. 192, 201–202, 452 S.W.2d 669, 673–674 (1969), *cert. denied,* 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970).

38. *See State v. Killebrew,* 760 S.W.2d 228, 231 (Tenn.Crim.App.1988).

39. Tenn.R.App.P. 27(a)(7); Tenn.Ct.Crim.App. Rule (10)(b); *State v. Killebrew,* supra, 760 S.W.2d at 231; *State v. Moore,* 713 S.W.2d 670, 675–676 (Tenn.Crim.App.1985).

40. Tenn.R.App.P. 27(a)(7); Tenn.Ct.Crim.App. Rule (10)(b); *State v. Killebrew,* supra, 760 S.W.2d at 231; *State v. Smith,* 735 S.W.2d 831, 836 (Tenn.Crim.App.1987).

41. *See State v. Killebrew,* supra; *Nuclear Fuel Services v. Local No. 3–677,* 719 S.W.2d 550, 552 (Tenn.Crim.App.1986).

However, we opt to address these issues in the interest of justice.

■ The trial judge sentenced the appellant on November 1, 1989, the effective date of the Tennessee Criminal Sentencing Reform Act of 1989.[42] Therefore, it is our duty to conduct a *de novo* review of the appellant's sentence "with a presumption that the determinations made by the court from which the appeal is taken are correct."[43]

■ The trial court correctly found that there are two mitigating factors present on the face of the record. First, the appellant's conduct neither caused nor threatened serious bodily injury.[44] Second, the appellant does not have a prior criminal record.[45] Regarding enhancement factors, the trial judge stated: "Now, looking at the enhancement factors, I don't find any enhancement factors that can be articulated from the statutory list under [Tenn.Code Ann. § ] 40–35–114 [Supp.1989]." However, the trial judge considered two sentencing considerations set forth in § 40–35–103 as enhancement factors. The two considerations adopted by the trial judge were "[c]onfinement is necessary to avoid depreciating the seriousness of the offense"[46] and "confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses."[47] The trial judge found a third enhancement factor, referred to as a "non-statutory" enhancement consideration, namely, the appellant attempted to perpetrate a fraud upon the jury by introducing fraudulent lumber company receipts. In short, the trial judge sentenced the appellant based upon a finding that there were two mitigating and three enhancement factors.

At the conclusion of a sentencing hearing, the trial judge must first determine the appropriate range.[48] The "presumptive sentence" which the trial judge is to impose is "the minimum sentence in the range if there are no enhancement or mitigating factors."[49] If there are enhancement factors but no mitigating factors, "then the court may set the sentence above the minimum in that range but still within the range."[50] When there are both enhancement and mitigating factors present "the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors."[51]

■ The phrase "mitigating factors", as used in Tenn.Code Ann. § 40–35–210 (Supp.1989), refers to the mitigating factors enumerated in Tenn.Code Ann. § 40–35–113 (Supp.1989). The phrase "enhancement factors," as used in this statute, refers to the enhancement factors enumerated in Tenn.Code Ann. § 40–35–114 (Supp. 1989). In short, the factors contained in §§ 40–35–113 and –114 are the exclusive factors which may be considered in setting the length of a sentence within a given range.

■ The sentencing considerations contained in Tenn.Code Ann. § 40–35–103 (Supp.1989) are neither "enhancement factors" nor "mitigating factors" as those terms are used in § 40–35–210. Subsection (1)(A) of § 40–35–103 provides that the criteria set forth in the statute should be used when determining whether an accused should be confined to a local jail, workhouse, regional workhouse, or the Department of Correction. As a general rule,

---

**42.** *See* Tenn.Code Ann. § 40–35–117(b) (Supp. 1989).

**43.** Tenn.Code Ann. § 40–35–401(d) (Supp.1989).

**44.** Tenn.Code Ann. § 40–35–113(1) (Supp.1989).

**45.** Tenn.Code Ann. § 40–35–113(13) (Supp. 1989). This statute provides that "[a]ny other factor consistent with the purposes of this chapter" may be considered as a mitigating factor.

**46.** Tenn.Code Ann. § 40–35–103(1)(B).

**47.** Tenn.Code Ann. § 40–35–103(1)(B).

**48.** Tenn.Code Ann. § 40–35–210(a).

**49.** Tenn.Code Ann. § 40–35–210(c) (Supp.1989).

**50.** Tenn.Code Ann. § 40–35–210(d) (Supp.1989).

**51.** Tenn.Code Ann. § 40–35–210(e) (Supp.1989).

confinement is justified when it is necessary to (a) protect society from an accused who has "a long history of criminal conduct," [52] (b) "avoid deprecating the seriousness of the offense," [53] (c) provide an effective deterrence to others likely to commit similar offenses," [54] and (d) other measures less restrictive "have frequently or recently been applied unsuccessfully." [55]

This interpretation of the Act is consistent with the purposes of the Act as well as the Committee Comments which accompany the Act. One of the purposes of the Act "is to assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." [56] This certainly could not be accomplished if a trial judge could consider "non-statutory" enhancement factors or other enhancement factors not enumerated in Tenn.Code Ann. § 40–35–114. Any other interpretation of the Act would permit a trial judge to justify any sentence that he or she desired to impose. Moreover, disparity in sentencing would not be eliminated, and there would be no predictability as to the sentence that might be imposed.

The comments of the Sentencing Commission support the conclusion we have reached. The comments accompanying Tenn.Code Ann. § 40–35–114 provides:

> Under § 40–35–210(b)(5), the trial judge must consider enhancing factors in sentencing determinations. The enhancing factors are set forth herein to identify those situations which justify a departure from the minimum penalties for each offense. The various enhancement factors are similar to several provisions of prior law. In all instances the enhancement factors can be utilized by the trial judge if those factors are "not themselves essential elements of the offense as charged in the indictment." This follows prior law which prohibits enhancement for a matter which is already an element of the offense.

Since there are no enhancement factors present, the trial judge should have sentenced the appellant to the minimum sentence within the standard offender range for a Class E felony.[57]

■ The trial judge properly refused to suspend the appellant's sentence and place him on probation.

■ Probation is a privilege or act of grace which may be granted to a defendant who is eligible and worthy of this largesse of the law.[58] However, the defendant has no demandable right to probation or the right to "insist on terms or strike a bargain." [59] To the contrary, the defendant has the burden of establishing that he is entitled to the privilege and grace of probation.[60] This requires a showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." [61]

■ The defendant's truthfulness at a trial or sentencing hearing is a factor that may be considered.[62] A trial judge may

52. Tenn.Code Ann. § 40–35–103(1)(A) (Supp. 1989).

53. Tenn.Code Ann. § 40–35–103(1)(B).

54. Tenn.Code Ann. § 40–35–103(1)(B).

55. Tenn.Code Ann. § 40–35–103(1)(C).

56. Tenn.Code Ann. § 40–35–102(2) (Supp.1989).

57. Tenn.Code Ann. § 40–35–210(c) (Supp.1989).

58. *Stiller v. State*, 516 S.W.2d 617, 619 (Tenn. 1974).

59. *Hooper v. State*, 201 Tenn. 156, 161, 297 S.W.2d 78, 81 (1956).

60. *State v. Brooks*, 741 S.W.2d 920, 925–926 (Tenn.Crim.App.1987); *Frazier v. State*, 556 S.W.2d 239, 241 (Tenn.Crim.App.1977).

61. *Hooper v. State*, supra, 201 Tenn. at 162, 297 S.W.2d at 81.

62. *See State v. Neeley*, 678 S.W.2d 48, 49 (Tenn. 1984); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn.1983); *State v. Jenkins*, 733 S.W.2d 528, 535 (Tenn.Crim.App.1987); *State v. Smith*, 735 S.W.2d 859, 863 (Tenn.Crim.App.1987); *State v. Lewis*, 641 S.W.2d 517, 520–521 (Tenn.Crim. App.1982); *State v. Morton*, 639 S.W.2d 666, 669 (Tenn.Crim.App.1982).

deny probation on this ground.[63]  In the case *sub judice* the trial judge concluded that the appellant perpetrated a fraud upon the jury as well as the court by introducing false receipts to establish an alibi defense.

Deterrence is also a factor which may be considered.[64]  Today, the sale and use of illicit narcotics are running rampant in every Tennessee community.  While our federal government, state government, local government, and law enforcement officials are continually taking steps to curtail the sale and use of illicit narcotics as well to rehabilitate the users, drug trafficking continues to flourish.  In fact, the gross sales and use of illicit narcotics continue to increase annually; and crimes that are directly related to the sale and use of illicit narcotics also continue to increase.

While the record is void of any evidence that the sale or use of drugs is running rampant in Hawkins County, this crime is deterrable *per se.*[65]  There has been and is an increasing public awareness of the need to deter individuals who engage in the sale of illicit narcotics;[66] and this awareness continues to be a matter of growing concern.[67]  Therefore, the appellant is not entitled to probation due to the deterrent effect that such a judgment will have on those who are engaged in like or similar conduct.

This Court agrees that a fine of $5,000 is appropriate in this case.

The conviction of the appellant is affirmed.  However, this cause is remanded to the trial court for the entry of a judgment sentencing the appellant as a Range I standard offender for the commission of a Class E felony.  The trial court shall impose the minimum punishment as required by law.

SCOTT and PEAY, JJ., concur.

---

63.  *State v. Bunch,* supra; *Smith v. State,* supra; *State v. Jenkins,* supra; *State v. Bowden,* 656 S.W.2d 58, 59 (Tenn.Crim.App.1983); *State v. Poe,* 614 S.W.2d 403, 404 (Tenn.Crim.App.1981).

64.  *State v. Michael,* 629 S.W.2d 13, 14 (Tenn. 1982); *State v. Bunch,* 656 S.W.2d 404, 405–406 (Tenn.Crim.App.1983); *State v. Windhorst,* 635 S.W.2d 706, 708 (Tenn.Crim.App.1982).

65.  *See State v. Cleavor,* 691 S.W.2d 541 (Tenn. 1985); *State v. Garren,* 644 S.W.2d 701, 704 (Tenn.Crim.App.1982).

66.  *See State v. Cleavor,* supra, 691 S.W.2d at 543.

67.  *See State v. Cleavor,* supra, 691 S.W.2d at 543.