IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 5, 2000

## STATE OF TENNESSEE v. WINSLOW B. ROBERTS

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 98-05743, 98-05744, 98-05745, 98-04746      Carolyn Wade Blackett, Judge**

_____

**No. W2000-00141-CCA-R3-CD - Filed May 9, 2001**

_____

The Defendant, Winslow B. Roberts, was found guilty by a Shelby County jury of two counts of especially aggravated kidnapping and two counts of aggravated robbery. The Defendant was sentenced to twenty years on each count of especially aggravated kidnapping, with the terms to be served concurrently, and ten years on each count of aggravated robbery, with the terms to be served concurrently. The trial court ordered that the Defendant's sentences for especially aggravated kidnapping be served consecutively to his sentences for aggravated robbery, for an effective sentence of thirty years. The Defendant now appeals, arguing that there was insufficient evidence presented at trial to convict him of especially aggravated kidnapping and aggravated robbery. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Garland Erguden (on appeal) and Thomas P. Pera (at trial), Memphis, Tennessee, for the appellant, Winslow B. Roberts.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Janet L. Shipman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

In October 1999, a Shelby County jury convicted the Defendant of two counts of especially aggravated kidnapping and two counts of aggravated robbery. The Defendant now appeals his convictions, arguing that the evidence is insufficient to justify a finding by a rational trier of fact that

the Defendant is guilty of especially aggravated kidnapping or aggravated robbery. We affirm the judgment of the trial court.

Viewing the facts in the light most favorable to the State, the following events took place on the evening of October 17, 1997: Jeremy Miller and Jason Rogers, students at the University of Memphis, went to Krystal's around three o'clock in the morning to get something to eat. While inside, they were approached by the Defendant. The Defendant began talking to them, asking them if they knew certain people and where they had gone to high school. Miller described the Defendant as a black male, approximately six feet tall, with dark skin, a goatee, weighing between two hundred and two hundred and ten pounds. Miller said that the Defendant was wearing a "Dallas Texas" t-shirt, a flannel overshirt, blue jeans and white tennis shoes. Rogers' description differed from Miller's only in that the perpetrator weighed slightly less and that he had a "gap in his teeth or a tooth missing."

After eating, Miller and Rogers walked out into the parking lot to get into Rogers' car. As Miller was standing outside the car with the passenger door open, the Defendant pushed him into the car and held a box cutter to his throat. The Defendant then told Rogers to drive or he would cut Miller's throat. As Rogers drove, the Defendant gave directions and continued to threaten both Miller and Rogers.

Rogers followed the Defendant's instructions and drove to a parking lot on Raymond Street. The Defendant then ordered Rogers to stop the car, turn it off and hand him the keys. The Defendant told Rogers and Miller to give him their wallets and empty their pockets. When they were able to produce only $10, the Defendant became upset and threatened to kill them.

After taking their belongings, the Defendant exited the vehicle and told Rogers and Miller to do the same. At this time, an older, bearded man in a raincoat approached the car. Miller began to walk towards the man to ask for help, but as Miller approached the man, the man "reached behind his back like he had a gun" and told Miller to back up. The man then asked the Defendant if everything was okay, and the Defendant said, "yeah, I'm fixing to jack these fools." The man responded, "cool." The Defendant and the man then jumped into the car and drove away, almost hitting Miller. Rogers and Miller ran to a nearby gas station and called the police. Officer Derrick Williams responded to the call and testified that when he arrived at the scene, Rogers and Miller appeared to be very upset and frightened.

The Defendant was later arrested on other charges. Soon thereafter, Rogers' car was found in a parking lot near the Defendant's apartment complex. No fingerprints were taken from the car before it was released to Rogers. Rogers testified that when he got the car back, the original rims and tires on the car were missing. Rogers and his sister cleaned out the car before it was sent to a body shop for repairs. While cleaning out the car, they found a "Dallas Texas" t-shirt and a denim jacket. Inside the jacket were pages from a bible and several receipts, including one from Dixie Tire Service and one from Radio Shack with the Defendant's name and address on it. When the car was

retrieved from the body shop, Rogers found a box cutter under the driver's seat. All of the items were turned over to the police.

Both Rogers and Miller identified the Defendant from a photo lineup and in court. Sergeant Michael Williams of the Memphis Police Department Robbery Bureau took the Defendant's statement in which the Defendant admitted that several of the items found in Rogers' car belonged to him. These items included receipts from Radio Shack and Goldsmith's, pages from a Bible, the denim jacket, and the "Dallas Texas" t-shirt. Also found in the car was a check from Jeremy Miller's bank account which had been filled out by someone other than Miller.[1] However, the Defendant denied having kidnapped Rogers and Miller or stealing their property. He also denied having purchased a tire from Dixie Tire Service or having any knowledge of how the receipt came to be in the pocket of his denim jacket.

In the Defendant's statement, he maintained that he, Rogers and Miller had all known each other since the ninth grade. He stated that on the night of the alleged kidnapping and robbery, the three men drove around from a little before midnight until two o'clock in the morning while they all smoked crack and marijuana. The Defendant said that he did not know Rogers' or Miller's name. He stated that he took off his t-shirt and jacket in the car because he had spilled beer on them. The Defendant also stated that Rogers and Miller had given him a "flannel-like" shirt.

Sergeant Williams testified that the clerk on duty at the gas station where Rogers and Miller stopped to call the police and the police who responded to the call did not verify the Defendant's claims that Rogers and Miller were under the influence of drugs or alcohol. Moreover, Rogers and Miller expressed a willingness to be drug-tested by the police department. No drug test was performed.

ANALYSIS

In this appeal, the Defendant argues that the evidence presented at trial was insufficient for a rational trier of fact to find that he was guilty of especially aggravated kidnapping and aggravated robbery. Specifically, the Defendant argues that his convictions rest solely on the accusations by Rogers and Miller, the Defendant's admission that he had been with Rogers and Miller that night and the presence of some of the Defendant's personal belongings in Rogers' car.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

---

[1] Sergeant Williams testified that Miller told police "he definitely did not fill out that check."

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

In this case, the Defendant was convicted of especially aggravated kidnapping and aggravated robbery. A person is guilty of especially aggravated kidnapping "who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty," Tenn. Code Ann. § 39-13-302(a), and accomplishes the act "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." Id. § 39-13-305(a)(1). Aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," id. § 39-13-401(a), "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." Id. § 39-13-402(a)(1).

Here, there was sufficient evidence for a rational jury to find the Defendant guilty of especially aggravated kidnapping and aggravated robbery. Both Miller and Rogers testified that the Defendant forced Miller into Rogers' car and then placed what Miller described as a razor across Miller's throat. He then commanded Rogers to drive or he would cut Miller's throat. The Defendant gave Rogers directions as he continued to hold a box cutter to Miller's throat.

Both witnesses testified that after the Defendant told Rogers to stop the car, the Defendant demanded that Miller and Rogers give him their wallets and empty their pockets while he threatened them with a box cutter. When they could only come up with $10, the Defendant threatened to kill them and then took Rogers' pager and Miller's watch. The Defendant then made Rogers and Miller exit the vehicle and took the car.

The Defendant points out the following in his defense: (1) At least four employees working at the Krystal's on that night failed to notice the incident; (2) the Defendant's fingerprints were not found inside the car or on the box cutter found in the car; and (3) Miller testified that he never saw the blade pressed against his neck, and both he and Rogers testified that there were no cuts or marks on his skin.

However, the jury heard Miller and Roger testify about what happened that night and found them to be credible. Moreover, the Defendant admitted to being with Miller and Rogers in the car

that night, and items which belonged to the Defendant were found in the car. There was ample evidence to support the jury's verdict convicting the Defendant of especially aggravated kidnapping and aggravated robbery.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE