IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2001

## STATE OF TENNESSEE v. SHERON LAMPTON

**Direct Appeal from the Circuit Court for Madison County**
**No. 99-896      Roger A. Page, Judge**

---

### No. W2000-01583-CCA-CD  - Filed August 23, 2001

---

The Defendant was convicted of second offense driving under the influence and violation of the open container law.  The trial court sentenced her to eleven months, twenty-nine days incarceration for the DUI conviction, suspended after service of ninety days, and to thirty days incarceration, suspended, for violation of the open container law.  In this appeal as of right, the Defendant argues that the evidence presented at trial was insufficient to support her convictions.  Having reviewed the record, we conclude that sufficient evidence was presented to support the jury's findings of guilt and therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

C. Michael Robbins (on appeal), Memphis, Tennessee; and George Morton Googe and Michael D. Rasnake (at trial and on appeal), Jackson, Tennessee, for the Appellant, Sheron Lampton.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; James G. Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On May 5, 2000, a Madison County jury convicted the Defendant, Sheron Lampton, of driving under the influence (DUI) and violation of the open container law.  At the conclusion of the trial, the Defendant stipulated that she was a DUI second offender.  The trial court conducted a sentencing hearing on June 13, 2000.  At the sentencing hearing, the State and the Defendant proposed an agreed sentence to the trial court, which the trial court approved.  Pursuant to the agreement, the court sentenced the Defendant to eleven months, twenty-nine days incarceration for the second offense DUI conviction, suspended upon service of ninety days, after which time the

Defendant was to be placed on Community Corrections. The trial court sentenced the Defendant to thirty days incarceration, suspended, for the violation of the open container law conviction. The court ordered that the sentences be served concurrently. The court also fined the Defendant $600 for the DUI conviction and $50 for the violation of the open container law conviction. The Defendant now appeals as of right, challenging the sufficiency of the evidence used to convict her. Having reviewed the record, we conclude that sufficient evidence was presented at trial to support the Defendant's convictions and thus affirm the judgment of the trial court.

At trial, Officer C. Wizer of the Jackson Police Department testified that he had been a police officer for a total of six years. He recalled that on the morning of July 18, 1999, while patrolling the streets of Jackson, he saw a white Chevrolet Caprice car which he suspected might be in violation of the window tint law. See Tenn. Code Ann. § 55-9-107. When he pulled the vehicle over, the Defendant emerged from the driver's seat holding a glass container. Wizer stated that as she exited her vehicle, the Defendant poured out the contents of the container. According to Wizer, he asked the Defendant what was in the glass, and she admitted that the glass contained beer. Wizer stated that while speaking with the Defendant, he could smell the odor of alcohol about her person. He also recalled that a passenger was riding with the Defendant at the time of the stop. Wizer testified that there was an open bottle of whiskey in the car, and the passenger admitted that it belonged to him.

Wizer testified that he asked the Defendant if she was armed, and she responded that she was not. He then checked the Defendant for weapons. Wizer maintained that as he patted the Defendant down, the Defendant began to pull out all her pockets, and she also untucked her shirt. He stated that at one point during the weapons check, he thought the Defendant "was going to take her shirt off." Wizer also noted that the Defendant's pants were unzipped, and he asked her to zip up her pants.

Wizer then asked the Defendant to perform field sobriety tests to determine if she was under the influence of alcohol. He first asked the Defendant to perform the "finger count to four." He explained that this test requires a suspect to touch his or her thumb to each of the fingers on the same hand, counting one through four; the suspect is then to touch his or her thumb to the same fingers in the opposite direction, counting backwards from four to one. Wizer stated that the Defendant performed poorly on this test. He recalled that while counting backwards, she inverted two numbers, thus counting as follows: "One, two, three, four, four, two, three, one."

Wizer next asked the Defendant to perform the "one-legged stand." This test requires a suspect to stand with hands down by his or her sides, lift one leg off of the ground about four to six inches, and maintain that position for several seconds. Wizer reported that the Defendant also performed poorly on this test. He stated that he had to instruct her several times on how to perform the test, and he testified that the Defendant raised her hands several times to catch her balance during the test.

Finally, Wizer asked the Defendant to perform the "ten step heel-to-toe walk in a straight line." He stated that the Defendant performed this test, but shortly after the test, he decided that she was too intoxicated to be driving and therefore took her into custody. Wizer recalled that after

arresting the Defendant, he asked her if she would take a breathalyzer test, but the Defendant refused. Wizer testified that by the time they reached the police department, the Defendant had become belligerent.

A video tape was recorded of Wizer's stop of the Defendant. The tape was played for the jury at trial. However, portions of the video were inaudible, and the tape began after the Defendant exited her vehicle and disposed of the contents of her glass.

The Defendant also testified at trial. She recalled that she was driving her car on the morning of July 18, 1999 when she saw blue lights behind her. She stated that she pulled over in response, got out of her car, and approached the police vehicle. She claimed that she was nervous because she did not know why she had been stopped. The Defendant also explained that she was somewhat disheveled at the time of the stop because she had just gotten out of bed. She reported that the passenger in her vehicle had awakened her to ask for a ride to the store.

The Defendant maintained that she had not been drinking on the morning of July 18, 1999. She recalled that when she exited her vehicle, she was drinking a glass of juice, which she poured out onto the ground. She testified that the officer who stopped her asked if the glass contained beer, and she claimed that she responded, "No, sir." When asked why she poured out the juice, the Defendant stated, "Because I really was wondering why I was being pulled over; . . . nine o'clock in the morning, Sunday morning." The Defendant further testified that she did not recall seeing a whiskey bottle in her vehicle that morning. She stated that if there was such a bottle in her car, it belonged to her passenger.

The Defendant explained that she pulled out her pockets and untucked her shirt to show Officer Wizer that she was unarmed. She admitted that she botched two field sobriety tests, the finger count test and the one-legged stand. She further admitted that she refused to take the breathalyzer test.

Anthony Woodson testified that he was friends with the Defendant. He stated that he was at her house on the morning of July 18, 1999 prior to her arrest. Woodson testified that he did not see the Defendant consume any alcohol that morning, that he did not smell alcohol about her person, and that the Defendant's speech was not slurred. He maintained that he did not notice anything about the Defendant's appearance or behavior that morning to indicate that she was intoxicated.

The Defendant now contests the sufficiency of the evidence presented at trial. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

The Defendant was convicted of driving under the influence, which is defined as follows:
It is unlawful for any person to drive or be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or any apartment housing complex, or any other premises which is generally frequented by the public at large, while:
(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or
(2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.
Tenn. Code Ann. § 55-10-401(a)(1)-(2). The Defendant was also convicted of violation of the open container law, which provides that "[n]o driver shall consume any alcoholic beverage or beer or possess an open container of alcoholic beverage or beer while operating a motor vehicle in this state." Id. § 55-10-416(a)(1).

We conclude that ample evidence was presented at trial to support the jury's verdict in this case. Officer Wizer testified that when he stopped the Defendant, she was holding a glass container of liquid which she poured out upon exiting her car. Wizer stated that the Defendant told him that the liquid was beer, and he recalled that the Defendant smelled of alcohol. He also stated that he saw an open bottle of whiskey in the Defendant's car. Wizer further testified that he asked the Defendant to perform field sobriety tests, and he maintained that she performed poorly on two of the tests. In addition, the State played a video tape of the Defendant's stop and subsequent arrest for the jury. The jury was presented with contradictory testimony by the Defendant and her friend, Anthony Woodson, and evidently accredited the testimony of Officer Wizer. We may not disturb this finding of fact on appeal. See Liakas, 286 S.W.2d at 859. We find this issue to be without merit.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE

-4-